UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
─────────────────────────────────────────

**UNITED STATES OF AMERICA,**

    vs.                                                                                1:07-CR-147 (NAM)

**DEVON DERVERGER,**

                             Defendant.
─────────────────────────────────────────

| APPEARANCES: | OF COUNSEL: |
|---|---|
| Glenn T. Suddaby<br>United States Attorney<br>For the Northern District of New York<br>445 Broadway, Room 218<br>Albany, New York 12207-2924 | Robert A. Sharpe, Esq.<br>Assistant United States Attorney |
| Office of the Federal Public Defender<br>For the Districts of Northern New York<br>and Vermont<br>39 North Pearl Street, 5th Floor<br>Albany, New York 12207<br>*Attorney for Defendant* | Gene V. Primono, Esq.<br>Assistant Public Defender |

**NORMAN A. MORDUE, Chief U.S. District Judge**

**MEMORANDUM - DECISION AND ORDER**

**I.  Introduction**

Currently pending before the Court is a motion to suppress evidence brought by defendant, Devon Derverger, pursuant to Rule 12(b)(3)(C) of the Federal Rules of Criminal Procedure. Defendant asserts that the seizure of a shotgun by officers of the Albany Police Department ("APD") violated his Fourth Amendment rights. Defendant also moves to suppress any statements that he made prior to and coinciding with the officers' seizure of the shotgun, as the fruit of an unlawful detention or as having been tainted by a Fourth Amendment violation. The Court held a suppression

hearing and requested the parties to submit proposed findings of fact and conclusions of law, which they have since filed. The following, based upon the Court's observations at the hearing, its review of the hearing transcript, the parties' submitted arguments and the applicable law, represents the Court's findings of fact and conclusions of law.

**II.     Background**

On July 5, 2006, in Albany, New York, law enforcement officers initiated a traffic stop of defendant's vehicle. As the result of the traffic stop during which officers seized a shotgun from defendant's vehicle, defendant was charged with Criminal Possession of a Weapon Third Degree, in violation of N.Y. PENAL LAW § 265.02(3), a class D felony, and Criminal Possession of a Weapon Fourth Degree, in violation of N.Y. PENAL LAW § 265.01(1), a class A misdemeanor. Additionally, the officers issued defendant a traffic citation for his failure to wear a seatbelt in violation of N.Y. VEH. & TRAF. § 1229(c)(3). Defendant was arraigned on the above charges in Albany City Court. After defendant's arraignment, however, members of the Albany County District Attorney's Office and the APD consulted with members of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and the United States Attorney's Office, and the federal authorities agreed to pursue charges against defendant. *See* Dkt. No. 16, Mem. of Law at 2-4.

On November 2, 2006, federal authorities brought a criminal complaint against defendant charging him with a violation of 26 U.S.C. § 5861(c) and obtained a warrant for his arrest. On November 3, 2006, special agents of the ATF arrested defendant and took him into custody. *See* Dkt. No. 16, Mem. of Law at 4. On March 16, 2007, a federal grand jury returned a one-count indictment against defendant, which charged that on or about July 5, 2006, defendant possessed a Mossberg 12-gauge shotgun modified such that (1) its overall length was less than 26 inches, (2) its barrel was less

than 18 inches and (3) it did not display a serial number, all in violation of 26 U.S.C. §§ 5845(a)(2), 5861(c) and 5871.[1]  *See* Dkt. No. 10, Indictment.

### III.     Findings of Fact

   *A.     Initiation of Traffic Stop*

On July 5, 2006, uniformed officers Brian Vennard of the APD and Josh Baker of the New York State Police were working together as part of the New York State Integrated Municipal Police Anti-Crime Team ("IMPACT").  At approximately 5:50 p.m., while performing their duties in a marked patrol vehicle in the vicinity of the intersection of Clinton and North Lake Avenues in the City of Albany, New York, they observed defendant operating a 1997 Acura stopped at a red traffic signal.  They further observed that defendant was operating the vehicle without wearing a seatbelt, and they decided that after the traffic signal turned green, they would initiate a traffic stop on that basis.  When the traffic signal turned green, they turned on their patrol vehicle's emergency lights, and defendant immediately pulled his vehicle to the side of North Lake Avenue.  *See* Dkt. No. 30, Tr. at 5-10.

Officer Vennard and Trooper Baker exited their patrol vehicle and approached the driver and passenger sides, respectively, of defendant's vehicle.  Officer Vennard observed that the windows of defendant's vehicle were down, and he asked defendant to produce his licence, insurance and registration.  Defendant promptly complied with Officer Vennard's request and handed over his license, insurance and registration.  *See* Dkt. No. 30, Tr. at 10-13.  The testimony offered by Officer

---

[1] Title 26 U.S.C. § 5845(a)(2) defines firearm as "a weapon made from a shotgun if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length."  Title 26 U.S.C. § 5861(c) provides that "[i]t shall be unlawful for any person to receive or possess a firearm made in violation of the provisions of this chapter."  Title 26 U.S.C. § 5871 specifies penalties and provides that "[a]ny person who violates or fails to comply with any provision of this chapter shall, upon conviction, be fined not more than $10,000, or be imprisoned not more than ten years, or both."

3

Vennard, Trooper Baker and defendant is largely consistent with respect to the initiation of the traffic stop. The parties' accounts, however, differ widely with respect to those issues most crucial to the resolution of the instant motion. As discussed below, the parties disagree as to defendant's demeanor, the timing and circumstances of defendant's admissions and law enforcement's search of his vehicle.

### B. *Defendant's Appearance and Demeanor*

At the hearing, Officer Vennard characterized defendant as unusually nervous during the course of the traffic stop. Vennard testified that defendant appeared "fidgety" and recalled that he stuttered in response to routine questioning. *See id.* at 12-13, 32. Similarly, Trooper Baker recalled having observed defendant's erratic movements and stuttered speech in response to questioning. *See id.* at 45. In contrast, however, defendant testified that his appearance and speech did not suggest any nervousness: he did not stutter his words; he was not sweating profusely; he was not shaking; and he experienced no difficulty producing his license and registration. *See id.* at 84. Defendant argues that any alleged nervousness is belied by the readiness with which he produced his license, insurance and registration: he was familiar with routine police procedure, having been previously pulled over for traffic violations. *See* Dkt. No. 23 at 6-7.

While the Court does not attach any presumption of credibility to Officer Vennard and Trooper Baker merely on the basis of their profession, it notes the consistency of Officer Vennard's and Trooper Baker's testimony on this point of contention. The Court also observes that common sense suggests that knowingly possessing an illegal shotgun, as admitted by defendant during his testimony, *see* Dkt. No. 30, Tr. at 99, in one's vehicle during an otherwise routine traffic stop might very well produce physical manifestations of nervousness such as those exhibited by defendant to the

4

two law enforcement officers. The Court finds the testimony of Officer Vennard and Trooper Baker credible.

*C.     Officer Vennard's Questioning*

Noting that he had pulled over defendant for a mere seatbelt infraction, Officer Vennard asked defendant why was he acting nervously and whether he possessed something illegal. *See* Dkt. No. 30, Tr. at 13, 16. Similarly, Trooper Baker recalled Officer Vennard asking defendant to account for his nervousness and whether "there was anything in the car he needs to know about." *See id.* at 45. The parties dispute the sequence of the next exchange. Both Officer Vennard and Trooper Baker testified that defendant answered that he had a shotgun located in the trunk of his vehicle, and Officer Vennard recalled that defendant characterized the shotgun as " 'perfectly legal.' " *See* Dkt. No. 30, Tr. at 16, 45. Defendant's answer prompted Officer Vennard to open the driver side door of the vehicle and ask defendant to step outside of the vehicle. Defendant complied with the request, and Officer Vennard then escorted him to the front of the vehicle and performed a pat down search by checking his body for any weapons.[2] *See id.* at 17. While defendant agreed that Officer Vennard informed him that he initiated the traffic stop because he was not wearing his seatbelt, acknowledged that he was not wearing his seatbelt, and agreed that Officer Vennard searched his person, *see id.* at 81, 84-85, he submits that Officer Vennard asked him three times whether he possessed anything illegal, that he answered "No," in each instance, *see* Dkt. No. 23 at ¶¶ 14-25, and that Officer Vennard asked him to step out of the vehicle despite his answers. On this point of contention, the

---

[2]By this juncture, Officer Vennard had "called out" the traffic stop and Officer Matthew Fargione of the Albany Police Department and Trooper Dave Mantei of the New York State Police responded to the scene shortly thereafter. *See* Dkt. No. 30, Tr. at 18. Officer Fargione testified that at the time he was assigned to IMPACT, and that as he and Trooper Mantei arrived at the traffic stop, he observed Officer Vennard talking with defendant and Trooper Baker walking from the passenger's side to the driver's side. Officer Fargione observed defendant exit his vehicle and Officer Vennard escort him to the front of vehicle. *See id.* at 62-64.

5

Court finds Officer Vennard's and Trooper Baker's testimony credible. The Court finds that in response to questioning while defendant was in his vehicle, he stated that he had a shotgun in the trunk, and after this admission Officer Vennard opened the driver side door and directed defendant to step outside his vehicle.

### D. Questioning Continues Outside the Vehicle

Officer Vennard and Trooper Baker testified that although Officer Vennard had asked defendant to step outside his vehicle and had frisked him, they did not consider him under arrest; Officer Vennard's concern was safety. *See* Dkt. No. 30, Tr. at 16-17, 46-47. Officer Vennard and Trooper Baker resolved to conduct further investigation before an arrest, if any, were to be made. Officer Vennard explained that if the shotgun were legal, then defendant's only concern would be a seat belt ticket. *See id.* at 19, 37. The parties, however, dispute the course and sequence of action taken in furtherance of the investigation. Officer Vennard testified that he asked if he could examine the shotgun and that defendant responded, "go ahead. It's in the trunk." *Id.* Officer Vennard remained with defendant curbside, *see id.*, and Trooper Baker "popped" the trunk. *See id.* at 47-48. Officer Fargione and Trooper Baker then searched the trunk of defendant's vehicle, *see id.* at 19, where they observed a shotgun, later identified as a Mossberg 12-gauge bolt-action shotgun, Model 195KA. *See* Dkt. No. 16, Mem. of Law at 2, 10. Trooper Baker observed that the shotgun was "sawed off" at both its stock and barrel and then signaled Officer Vennard to handcuff defendant.[3] Dkt. No. 30, Tr. at 48. Officer Vennard placed defendant under arrest and handcuffed him. *See id.*

---

[3]Subsequent to defendant's arrest, the APD transferred custody of the shotgun to Special Agent Maurino of the ATF, who proceeded to conduct an investigation of its dimensions and registration. Special Agent Maurino measured both the barrel length and overall length of the shotgun and found that the barrel was approximately 12 ⅜ inches long and that its overall length was approximately 23 ½ inches. The National Firearms Act Branch of the ATF reviewed the National Firearms Registration and Transfer Record and on September 7, 2006, confirmed for Special Agent Maurino that defendant neither registered nor received lawful permission to possess the shotgun as modified. *See* Dkt. No. 16, Mem. of Law at 3-4.

at 20. Trooper Baker testified that he conducted an inventory search of the vehicle's interior after defendant was handcuffed. *See* Dkt. No. 30, Tr. at 49-50.

In his Proposed Findings of Fact, defendant asserts that after observing Trooper Baker search his vehicle's interior, he anticipated that the officers might find the shotgun in the trunk and became scared as to their reaction. Defendant contends that only then did he tell Officer Vennard that there was a shotgun in the trunk of his vehicle. In addition, defendant maintains that he did not consent to the search of his vehicle's trunk. *See* Dkt. No. 23 at ¶¶ 27-31. Furthermore, defendant asserts that Officer Vennard "popped" the trunk of his car. *See* Dkt. No. 23 at ¶ 30. Based upon defendant's submissions, it appears that defendant assumed that the officers would inevitably find the shotgun in his vehicle's trunk because they had already initiated a search of his vehicle's interior without his consent.

The Court finds that when Officer Vennard asked defendant if he could examine the shotgun, defendant replied, "go ahead. It's in the trunk." Furthermore, the Court finds that defendant indicated the presence of a shotgun in his vehicle's trunk before Trooper Baker conducted the any search of the vehicle's interior. The Court also notes that the duration of the questioning during the traffic stop was relatively brief. Trooper Baker testified that he conducted the interior search of defendant's vehicle approximately ten minutes after the initiation of the traffic stop and approximately five or six minutes after Officer Vennard handcuffed and arrested defendant. *See* Dkt. No. 30, Tr. at 50. This time-line suggests that Officer Vennard's questioning of defendant took no more than five minutes. Having resolved the factual disparities in the parties' accounts, the Court turns to the law applicable to the facts of the case.

**III.     Conclusions of Law**

7

The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV; *e.g.*, *Whren v. United States*, 517 U.S. 806, 809 (1996). The touchstone of the Fourth Amendment is reasonableness, and the reasonableness of a search is determined "by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." *United States v. Knights*, 534 U.S. 112, 118-19 (2001) (quoting *Wyoming v. Houghton*, 526 U.S. 295, 300 (1999)). "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' " under the Fourth Amendment." *Id.* Therefore, such stops must not be "unreasonable" under the circumstances. *Id.* at 810. A routine traffic stop is more analogous to an investigative detention than a custodial arrest, *see United States v. Hunnicutt*, 135 F.3d 1345, 1348 (10th Cir.1998), and the Court thus relies upon the principles developed for investigative detentions set forth in *Terry v. Ohio*, 392 U.S. 1 (1968).

*A.   Initiation of Traffic Stop*

A traffic stop is valid under the Fourth Amendment if, as here, it is based on an observed traffic violation. *See Delaware v. Prouse*, 440 U.S. 648, 663 (1979). Defendant does not dispute that Officer Vennard's and Trooper Baker's observations provided them with probable cause to initiate the traffic stop. *See* Dkt. No. 23 at 13. This initial probable cause justified Officer Vennard's and Trooper Baker's seizure of defendant, if only temporarily. *See Whren*, 517 U.S. at 818-19.

*B.   Investigative Detention*

It is well-established that, "consistent with the Fourth Amendment, [a police officer may]

8

conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity [may be] afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Terry*, 392 U.S. at 30 ). To determine the reasonableness of an investigative detention, the Court makes a dual inquiry, asking first "whether the officer's action was justified at its inception," and second "whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 20. When determining whether reasonable suspicion exists, the Court must assess the "totality of the circumstances" to see whether the officer had a "particularized and objective basis for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (further quotation omitted). Moreover, although " 'reasonable suspicion' is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop." *Id.* (citing *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). Thus, "[t]he officer must be able to articulate more than an 'inchoate and unparticularized suspicion or 'hunch' of criminal activity." *Id.* at 123-24 (citing *Terry*, [392 U.S.] at 27) (footnote omitted). In addition, although the Supreme Court has declined to impose a "hard-and-fast time limit for a permissible *Terry* stop," law enforcement must, nevertheless, act with diligence in their investigative efforts. *United States v. Sharpe*, 470 U.S. 675, 686 (1985); *see also Florida v. Royer*, 460 U.S. 491, 500 (1983); *United States v. Tehrani*, 49 F.3d 54, 61 (2d Cir. 1995) (declining to hold that a thirty minute detention based on reasonable suspicion is, *per se*, too long). The Court assesses "reasonableness" along a continuum which in this instance escalated from police-citizen contact and concomitant temporary detention during a traffic stop to a custodial arrest. Accordingly, the Court examines the totality of the circumstances and scrutinizes the scope and duration of the investigative detention at

9

issue in its effort to determine whether Officer Vennard and Trooper Baker's investigative detention of defendant prematurely transformed into a custodial interrogation/*de facto* arrest.

Officer Vennard approached defendant in his vehicle and asked him to produce his license, insurance and registration. Both Officer Vennard, from the driver side, and Trooper Baker, from the passenger side, observed that defendant appeared nervous. Officer Vennard's questions pertaining to defendant's nervousness and possession of anything illegal were limited to his and his partner's observations, and were brief in duration lasting no more than five minutes and probably much less than that.[4] Furthermore, Officer Vennard's questions were not accompanied by an overly aggressive investigative posture so as to suggest that defendant was required to answer Officer Vennard's questions. *See United States v. Drayton*, 536 U.S. 194, 203-204 (2002) (holding no seizure where officers' questioning was not coupled with use of force or overwhelming show of force, intimidating movements, brandishing of weapons, blocking of exits, threats, commands or authoritative tone of voice, and show of badge). Given the totality of the circumstances, the Court concludes that Officer Vennard's questioning was reasonable.

C.   *Pat-Down Search*

In response to Officer Vennard's questions, defendant responded that he had a legal shotgun in the trunk of his vehicle. When an officer has a reasonable suspicion that a person may be armed and dangerous, the officer may conduct a limited search for weapons in order to ensure the safety of the officer and the general public. *Terry*, 392 U.S. at 27-28. This "narrowly drawn authority" permitting a reasonable search for weapons for the protection of a police officer applies "regardless

---

[4]As noted above, Officer Vennard had arrested and handcuffed defendant within five minutes from the initiation of the traffic stop. During those five minutes, Officer Vennard questioned defendant both inside and outside of the vehicle and performed a pat frisk.

of whether [the officer] has probable cause to arrest the individual for a crime." *Id.* at 27. To fall within this "narrowly drawn authority," a search must meet two requirements. "First, it cannot be motivated solely by a 'hunch' that an individual is armed and dangerous . . . [rather] [t]here must instead be a suspicion supported by 'specific reasonable inferences which [the officer] is entitled to draw from the facts in light of his experience." *United States v. Casado*, 303 F.3d 440, 444 (2d Cir. 2002) (quoting *Terry*, 392 U.S. at 27 ). "Second, the weapons search must be 'confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer.' " *Id.* (quoting *Terry*, 392 U.S. at 29).

Here, neither Officer Vennard's request that defendant step out of his vehicle nor his pat down search of defendant was based upon a hunch. Rather defendant had provided information which reasonably raised concern with respect to officer safety. Officer Vennard confined the scope of his pat down search such that he only checked for weapons on defendant's person, and the Court finds that the pat down search was reasonable in light of the totality of the circumstances.

D.   *Consent*

A Fourth Amendment search occurs if " 'the individual manifested a subjective expectation of privacy in the object of the challenged search, and society [is] willing to recognize that expectation as reasonable.' " *Palmieri v. Lynch* , 392 F.3d 73, 81 (2d Cir. 2004) (quoting *Kyllo v. United States*, 533 U.S. 27, 33 (2001)). Defendant has met his burden of production by alleging that law enforcement seized the shotgun at issue without a warrant. Although a warrantless search is *per se* unreasonable, a warrantless search based upon voluntary consent is reasonable. *See Florida v. Jimeno*, 500 U.S. 248, 250-51 (1991).

"Voluntariness is a question of fact determined by a 'totality of the circumstances.' " *United*

11

*States v. Isiofia*, 370 F.3d 226, 231 (2d Cir. 2004) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973). A person is seized by the police and thus entitled to challenge the government's action under the Fourth Amendment when the officer, " 'by means of physical force or show of authority,'" terminates or restrains his freedom of movement, *Florida v. Bostick*, 501 U.S. 429, 434 (1991) (quoting *Terry*, 392 U.S. at 19, n. 16), "*through means intentionally applied.*" *Brower v. County of Inyo*, 489 U.S. 593, 597 (1989) (emphasis in original). To determine whether a person was in custody, the Court must examine all of the circumstances relating to the ultimate question of whether there was "a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *United States v. Newton*, 369 F.3d 659, 670 (2d Cir. 2004). The Second Circuit has identified factors relevant to this inquiry; they include "whether a suspect is or is not told that [he] is free to leave; the location and atmosphere of the interrogation; the language and tone used by the police; whether the suspect was frisked or patted down; and the length of the interrogation." *Tankleff v. Senkowski*, 135 F.3d 235, 244 (2d Cir. 1998) (citations omitted). Furthermore, the inquiry is objective: "[t]he test for determining whether [a suspect] was in custody is whether a reasonable person in the defendant's position would have understood himself to be subjected to the restraints comparable to those associated with a formal arrest." *United States v. Ali*, 68 F.3d 1468, 1472 (2d Cir. 1996). The government must prove by a preponderance of the evidence that defendant offered his consent freely and did not simply acquiescence to a show of authority. Consent is involuntary if it is exacted from explicit or implicit coercion caused by implied threat or covert force. *See Untied States v. Snype*, 441 F.3d 119, 131 (2d Cir. 2006) (citing *Schneckloth*, 412 U.S. at 228, 93 S.Ct. 2041; *Isiofia*, 370 F.3d at 230.

After completing the pat down search, Officer Vennard asked defendant if he could see the

shotgun, and defendant responded "go ahead. It's in the trunk." The Court must assess the context in which defendant made this reply. At that juncture, defendant was not in custody: Officer Vennard and Trooper Baker neither arrested nor handcuffed defendant, and at no time did they brandish weapons or intimidate or threaten defendant. They resolved, however, to conduct further investigation. Officer Vennard explained that if the shotgun were legal, then defendant's only concern would be a seat belt ticket and he would have been free to leave. As discussed earlier, Officer Vennard's questioning of defendant was brief. Again, the circumstances fail to demonstrate police coercion: Officer Vennard and Trooper Baker did not brandish their weapons, handcuff defendant, or subject defendant to physical abuse, psychological coercion or trickery. Given the totality of the circumstances, the government has met its burden of proving, by a preponderance of the evidence, that defendant voluntarily offered his consent to search for the shotgun. In light of defendant's consent, the officers' search of the vehicle's trunk and seizure of the shotgun was reasonable. Moreover, their seizure of the shotgun was lawful based upon their observation that it appeared to be illegally modified. Defendant's motion to suppress the shotgun and any statements made by him is DENIED.

**IV.   Conclusion**

WHEREFORE, after careful consideration of the parties' submissions and the applicable law, and based upon the foregoing, it is hereby

ORDERED, that defendant's motion to suppress (Dkt. No. 18) is hereby DENIED

IT IS SO ORDERED.

Dated: March 24, 2008
       Syracuse, New York

_____
Norman A. Mordue
Chief United States District Court Judge